[Cite as *Marchbanks v. JPMorgan Chase Bank, N.A.*, 2024-Ohio-5876.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL

| | |
|---|---|
| JACK MARCHBANKS, DIRECTOR, OHIO DEPARTMENT OF TRANSPORTATION, | CASE NO. 2024-T-0041 |
| Plaintiff-Appellee, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| JPMORGAN CHASE BANK, N.A., SUCCESSOR BY MERGER TO BANK ONE, YOUNGSTOWN, N.A., AN OHIO CORPORATION, et al., | Trial Court No. 2022 CV 01605 |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: December 16, 2024
Judgment: Affirmed

*Dave Yost*, Ohio Attorney General, State Office Tower, 30 East Broad Street, 16th Floor, Columbus, OH 43215, and *Shantae DeCarlo* and *William J. Cole*, Senior Assistant Attorney Generals, Executive Agencies Section, Transportation Unit, 30 East Broad Street, 26th Floor, Columbus, OH 43215 (For Plaintiff-Appellee).

*William M. Mattes*, *Charles E. Ticknor, III*, and *Gregory P. Mathews*, Dinsmore & Shohl LLP, 191 West Nationwide Boulevard, Suite 200, Columbus, OH 43215 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}    Appellant, JPMorgan Chase Bank, N.A. ("Chase"), appeals the decision of the Trumbull County Court of Common Pleas granting summary judgment in favor of appellee, Jack Marchbanks, Director, Ohio Department of Transportation ("ODOT"). For the following reasons, we affirm.

{¶2} This appeal arises from the appropriation of two parcels of land owned by Chase. On November 17, 2022, ODOT initiated an appropriation action in the Trumbull County Court of Common Pleas. In its petition, ODOT sought to acquire a temporary easement over one of the parcels owned by Chase, and to acquire fee simple in the other. In ODOT's petition it identified the parcel it sought a temporary easement over as "Parcel 21-T," and the parcel it sought fee simple in as "Parcel 21-WD."[1] This appeal only concerns the parcel of land to which ODOT sought fee simple.

{¶3} The stated purpose for the appropriation was for "making, constructing, repairing or improving a state, U.S. or Interstate highway which shall be open to the public, without charge." Appellee's Petition, Dkt. 1, p. 2. On April 15, 2024, the trial court issued a judgment entry granting summary judgment in favor of ODOT, approving the temporary easement over the first parcel, and ordering Chase to execute a warranty deed for the second parcel to ODOT.

{¶4} The parties do not dispute that ODOT's appropriation was lawful, nor do they dispute the value to be conferred to Chase for the appropriation. Instead, Chase challenges the decision of the trial court ordering Chase to execute to ODOT a warranty deed. Chase's principal argument is that implicit in a warranty deed is the covenant of warranty, which includes a promise made by the grantor to defend the grantee from future claims against title. Chase contends that the trial court exceeded the scope of its authority by not only approving ODOT's appropriation of property, but by ordering Chase to execute

---

1. Attached to its petition, ODOT included a separate legal description for each parcel it sought to acquire. However, the Trumbull County Auditor Parcel Number, that was included with the legal descriptions provided, are identical (Parcl No. 28-293125).

2

a warranty deed that would essentially include the promise to indemnify a government agency against future claims against good title.

## Assignments of Error

{¶5}   In this appeal, Chase asserts two assignments of error:

{¶6}   [1.] "The trial court erred in granting ODOT's motion for summary judgment because Ohio law does not authorize a state agency to appropriate a warranty deed."

{¶7}   [2.] "The trial court erred in granting ODOT's motion for summary judgment because the motion did not comply with Civ.R. 56."

{¶8}   At issue is whether it was proper for the trial court to grant summary judgment in favor of ODOT, whether the trial court had authority to order Chase to execute a Warranty Deed to ODOT for the appropriated property, and if ODOT's motion for summary judgment complied with Ohio Civ.R. 56(C).

## Standard of Review

{¶9}   We review a trial court's decision to grant summary judgment under a de novo standard of review.

{¶10}   "A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review." *McFadden v. Discerni*, 2023-Ohio-1086, ¶ 12 (11th Dist.) (citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105). "'A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision.'" *Id.* quoting *Peer v. Sayers*, 2011-Ohio-5439, ¶ 27 (11th Dist.).

{¶11} Summary judgment is proper when it appears from the evidence that reasonable minds can come to but one conclusion:

3

Case No. 2024-T-0041

[S]ummary judgment is proper "when (1) the evidence shows 'that there is no genuine issue as to any material fact' to be litigated, (2) 'the moving party is entitled to judgment as a matter of law,' and (3) 'it appears from the evidence * * * that reasonable minds can come only to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor.' "

*Id.* at ¶ 11, quoting Civ.R. 56(C).

## First Assignment of Error

{¶12} Chase directs the Court to three issues for review.

{¶13} First, Chase asserts that R.C. Chapter 163 does not authorize a state agency to "appropriate a deed."

{¶14} Second, Chase contends that R.C. Chapter 163 does not authorize a state agency or court to compel a property owner to make covenants of title concerning the appropriated property.

{¶15} Third, Chase further asserts that a property owner contesting a state agency's authority to take a warranty deed, but not the agency's right or necessity to appropriate the property, is not required to seek an injunction to prevent the appropriation.

## Eminent Domain

{¶16} "The Ohio Constitution states that 'private property shall ever be held inviolate, but subservient to the public welfare. * * * Where private property shall be taken for public use, a compensation shall be assessed * * *.' " *Bacak v. Trumbull Cty. Bd. of Commrs.*, 2016-Ohio-4737, ¶ 57 (11th Dist.), quoting *State ex. rel. OTR v. City of Columbus*, 76 Ohio St.3d 203, 206. "A taking occurs when a landowner experiences a substantial or unreasonable interference with property. * * * That interference may involve

4

an actual physical taking of real property or it may include the deprivation of an intangible interest in the premises." *Id.*

{¶17} "Though the Ohio Constitution may bestow on the sovereign a magnificent power to take private property against the will of the individual who owns it, it also confers an 'inviolable' right of property on the people. When the [S]tate elects to take private property without the owner's consent, simple justice requires that the [S]tate proceed with due concern for the venerable rights it is preempting." *Norwood v. Horney*, 2006-Ohio-3799, at ¶ 68 citing *Cleveland v. Hurwitz*, 19 Ohio Misc. 184, 192 (C.P. 1969).

{¶18} An appropriation action is the procedural device provided by statute to carry out the state government's eminent domain power, otherwise known as a condemnation proceeding. Section 163.63 of the Ohio Revised Code provides clarification:

> Any reference in the Revised Code to any authority to require real property by "condemnation" or to take real property pursuant to a power of eminent domain is deemed to be an appropriation of real property pursuant to this chapter and any such taking or acquisition shall be made pursuant to this chapter.

{¶19} Chapter 5501 grants the Ohio Department of Transportation with the authority to appropriate property, while Chapter 163 of the Ohio Revised Code governs the appropriation action.

{¶20} Here, ODOT, a state agency, sought to take fee simple ownership of property owned by Chase.

{¶21} "'A fee simple is the highest right, title and interest that one can have in land. It is the full and absolute estate in all that can be granted.'" *S.E. Baseball & Softball Assn. v. Deerfield Twp. Bd. of Trustees*, 2021-Ohio-2887, ¶ 102 (11th Dist.).

Case No. 2024-T-0041

{¶22} Land conveyances are governed by Ohio Revised Code Chapter 5302. A general principle of property law is that implicit in every general warranty deed are covenants that the grantor bestows upon the grantee. In Ohio, R.C. 5302.06 sets forth the covenants embodied in a general warranty deed:

> In a conveyance of real estate, or any interest therein, the words "general warranty covenants" have the full force, meaning, and effect of the following words: 'The grantor covenants with the grantee, his heirs, assigns, and successors, that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that he has good right to sell and convey the same, and that he does warrant and will defend the same to the grantee and his heirs, assigns, and successors, forever, against the lawful claims and demands of all persons.'

### The Trial Court's Jurisdiction

{¶23} "[T]he Supreme Court of Ohio addressed the trial court's jurisdiction in an appropriation action brought by the Director of Highways. * * * 'In an appropriation proceeding by the Director of Highways of the [S]tate of Ohio for the purpose of taking property for highway purposes * * * *the jurisdiction of the Court of Common Pleas is limited to a determination of the amount of compensation and damages to which the landowner is entitled.' "* (Emphasis original.) *Proctor v. Theiken*, 2004-Ohio-7281, ¶ 15 (4th Dist.), quoting *Thormyer v. Irvin*, 170 Ohio St. 276, paragraph one of the syllabus. *See also, In re Appropriation of Easement for Highway Purposes (Preston v. Weiler)*, 175 Ohio St. 107, 111 (1963); *Sargent v. City of Cincinnati*, 110 Ohio St. 444, 449 (1924); *Emery v. City of Toledo*, 121 Ohio St. 257, 264 (1929).

{¶24} ODOT filed a Motion for Summary Judgment in the trial court on October 13, 2023. When determining a decision on summary judgment, the trial court's jurisdiction in this case was confined to the consideration of only the amount of compensation and

6

Case No. 2024-T-0041

damages due to Chase. *Proctor*, supra, at 15. At no point did Chase challenge the lawfulness of ODOT's taking of the property. More importantly, the parties stipulated the value of the property to be appropriated, as evidenced by the Stipulation of Value filed with the trial court on October 13, 2023. As no dispute existed between the parties on the sole issue before the trial court, Chase's compensation and damages, the trial court was proper to grant summary judgment in favor of ODOT.

{¶25} It should be noted that ODOT did not specify that transfer of title by way of warranty deed was required in its initial petition. However, ODOT's subsequent motion for summary judgement does contest Chase's assertion that ODOT is not entitled to a warranty deed and argues in support of its contention.

{¶26} In its brief, Chase asks this court to review the issue of whether Chapter 163 authorizes ODOT to "appropriate a deed."

{¶27} Chapter 163 does not contain any statute requiring that a property owner in an appropriation action convey title to the appropriated property via warranty deed. It appears that title vests in the appropriating agency upon payment of just compensation and the filing of a judgment entry granting the appropriation.

{¶28} R.C. 163.14(B) explains:

> * * * The title to said structure shall vest in the agency which shall have the right to enter upon the adjoining land upon which any part of the structure is located for the purpose of removing said structure therefrom, after deposit in accordance with the verdict. * * *

{¶29} R.C. 163.15(A) further elaborates on the transfer process:

> As soon as the agency pays the party entitled thereto or deposits with the court the amount of the award and the costs assessed against the agency, it may take possession * * *. Whenever a final journal entry in an appropriation proceeding,

7

Case No. 2024-T-0041

granting to this state a fee title or any lesser estate or interest in real property is filed and journalized with the clerk of courts, the clerk of courts shall forthwith transmit to the county auditor a certified copy of said final journal entry who shall transfer the property on the auditor's books and transmit said entry with proper endorsement to the county recorder for recording. * * *

{¶30} Our research further reveals no statute in R.C. Chapter 5501 that demands that the transfer of title from the property owner to ODOT by way of appropriation through a warranty deed.

{¶31} ODOT asserts that R.C. 5501.31 and R.C. 5501.32 grant the agency authority to appropriate property by way of a warranty deed. ODOT's assertion is misplaced, as the statute provides for *either* purchase of the property sought *or* appropriation. Appropriation, however, is a separate mechanism utilized when the parties fail to agree.

{¶32} R.C. 5501.31 gives the director of transportation authority to *purchase* or *appropriate* property:

> The director may *purchase or appropriate* property necessary for the location or construction of any culvert, bridge, or viaduct, or approaches thereto, including any property needed to extend, widen or alter any feeder or outlet road, street, or way * * *.

(Emphasis added.)

{¶33} R.C. 5501.32 is specific in the authority it grants to the director of transportation is for *purchasing property* from a willing seller:

> The director of transportation *may purchase property in fee simple* in the name of the state *by warranty deed*, and all or any part of tract of land when the acquisition of a part of the land needed for highway purposes will result in substantial damages to the residue by severance, controlled access, or isolation. * * * Any instrument by which real property is

8

Case No. 2024-T-0041

acquired pursuant to this section shall identify the agency of the state that has the use and benefit of the real property * * *."

(Emphasis added.)

{¶34} Prior to any appropriation action filed with the trial court, an appropriating agency must first notify the landowner of their intent, *make an offer to purchase*, and then the parties must fail to come to an agreement before an appropriation action may be taken. R.C. 163.04 provides:

> (A) At least thirty days before filing a petition * * * an agency shall provide notice to the owner of the agency's intent to acquire the property. * * *

> (B) Together with the notice * * * or after providing that notice but not less than thirty days before filing a petition * * * an agency shall provide an owner with a written good faith *offer to purchase* the property. * * *

> (D) An agency may *appropriate* real property only after the agency is unable to agree on a conveyance or the terms of a conveyance, for any reason, with any owner or the guardian or trustee of any owner * * *.

(Emphasis added.)

{¶35} Ohio case law is devoid of further discussion pertaining to when title vests and with what instrument it must vest title in the appropriating agency. Other state jurisdictions have touched on the issue. At least one Texas Court of Appeals has held, "Title vests upon entry of judgment and payment for the property. *State v. Montgomery County*, 338 S.W.3d 49, 55 (Tex.Cir.App. 2011). The Supreme Court of Kings County, New York has stated that, "a vesting order vests title in the condemnor and terminates any existing right of possession by tenants * * *." *Matter of City of New York*, 62 Misc. 3d 974 (N.Y. 2019).

9

Case No. 2024-T-0041

{¶36} Absent Ohio case law to guide us, we turn to the Restatement of Property for clarification.

{¶37} The Restatement (First) of Property § 10 (1936) describes an owner of property: "The word 'owner,' as it is used in this Restatement, means the person who has one or more interests."

{¶38} The Restatement in § 5 defines interest: "The word 'interest' is used in this Restatement both generically to include varying aggregates of rights, privileges, powers and immunities and distributively to mean any one of them."

{¶39} In § 13 the Restatement defines transfer: "(1) The word 'transfer,' as it is used in this Restatement, when applied to interests in land or in a thing other than land, means the extinguishment of such interests existing in one person and the creation of such interests in another person. (2) The verb 'to transfer,' as it is used in this Restatement, means 'to make transfer.'"

{¶40} Chase argues that by title vesting in an agency of the State through a warranty deed, a government entity is appropriating more than simply the property itself. Chase additionally argues that the warranty deed is unnecessary for title to transfer because vesting occurs through judgment entry of the trial court granting the appropriation. Chase contends that by ordering it to execute a warranty deed, ODOT, a government agency, is appropriating additional rights along with the deed. The dispute turns on the question of when title vests and if the deed carries with it rights and obligations that can be enforced against the property owner by the government.

{¶41} The Restatement (First) of Property § 565 (1944) provides clarity on what the government receives when it acquires property through condemnation. Comment b,

10

speaking on the extinguishment of easements upon condemnation by the government, provides:

> When the subject matter of private property is so taken, through the exercise of the power of eminent domain, that a privilege is acquired to prevent the future exercise of specific rights with respect to such subject matter the rights cease to exist. The **rights themselves are not appropriated;** *they are merely extinguished by the exercise of a power paramount to them.* Thus when land owned by A is appropriated by the state for the purpose of erecting a public building thereon, the title the state acquires is not derived from or through A. The state acquires a new title not dependent in any way upon the previously existing title of A. ***A's title is not transferred to the state but is extinguished by the exercise of an inherent power of the state.*** In the same way an easement is extinguished through the appropriation by the state of the land subject to it.

(Emphasis added.)

{¶42} Applying this logic to other rights involved in a taking of real property suggests that the rights imputed to a warranty deed are not appropriated by the government, but rather, extinguished upon successful appropriation.

{¶43} Like the extinguishment of easements, restrictive covenants are ineffective against the government when property is appropriated for public use. The rationale is that restrictive covenants would allow the private individual to constrain the government and prevent it from exercising its inherent right to of eminent domain for matters of public necessity, such as national defense. *Doan v. Cleveland Short Line Ry. Co.*, 92 Ohio St. 461, 470 (1915). Such constraints on the government's power to appropriate would eradicate the principle that diminished property value does not constitute a taking and would entitle individual landowners to demand just compensation for any violation of a neighboring property owner's covenanted agreement for land use. *Id.*

11

> \* \* \* We are constrained to the conclusion that restrictive covenants in deeds or a general plan for the improvement of an allotment cannot be construed to prevent the use of the lots for public purposes, and as against the state or any of its agencies which are vested with the right of eminent domain are illegal and void, confer no property right and cannot be the basis for a claim for damages.

*Id.*

**{¶44}** To entitle the government to appropriate the covenants embodied in a warranty deed, requiring individual property owners to uphold a future promise to defend the government, as Chase's argument suggests, appears counterintuitive to what we understand about the government's eminent domain power.

**{¶45}** In a dispute against title, a quiet-title action is the statutory cause of action utilized to settle a dispute in the chain of title and determine true ownership. "The purpose of any quiet-title action is to conclusively determine the allocation of property interests." *Ochsenbine v. Cadiz*, 2005-Ohio-6781, ¶ 13 (7th Dist.) citing *Lincoln Healthcare, Inc. v. Keck*, 2003-Ohio4864, ¶ 23 (11th Dist.).

**{¶46}** "'A quiet title action is not designed to adjudicate plaintiff's title as superior to the whole world, but only as compared to the other parties.' 65 Am. Jur. 2d Quieting Title § 34. \* \* \* A third party who claims a superior interest would not be precluded from bringing his own action to challenge the plaintiff's interest and establish his own." *Huron v. McCune*, 2023-Ohio-575, ¶ 40 (6th Dist.), quoting *Yeager v. Beckley*, 1996 WL 65942 (7th Dist. Feb. 12, 1996).

**{¶47}** It has been held in Ohio that quiet-title does not lie against the state, based on principles of sovereign immunity. *See West Park Shopping Center, Inc. v. Masheter*, 6 Ohio St.2d 142, 144. However, a state agency can be brought into an action for quiet title.

12

Case No. 2024-T-0041

**{¶48}** R.C. 5303.01 provides in relevant part:

> Whenever the state or any agency or political subdivision thereof has, or appears to have, an interest in real property adverse to the person in possession claiming the right thereto, *the state or such agency or such political subdivision may be made a party in any action brought under this section.* * * *

(Emphasis added.)

**{¶49}** Though the government can be brought into an action for quiet-title to settle disputes over ownership interests in property, a quiet-title action brought directly against the government contravenes the principles of the sovereign's eminent domain power. Assuming that existing property rights are extinguished upon appropriation, by virtue of the government's inherent power to appropriate, any disputed portion of interest prior to the government's taking would be no less subject to extinguishment, rendering the issue moot.

**{¶50}** Chase's primary issues, however, are whether it would be required to defend the State against those adverse claims, regardless of if they can survive. Or, if the trial court had authority to order the deed's execution at all and if by doing so, if something of additional value was being appropriated.

**{¶51}** This Court's purview, as a reviewing court of record, is to the assignments of error brought before us. Chase contends that the trial court improperly granted summary judgment based on the question of whether the promises conveyed in the execution of a warranty deed hold true where the grantee is a government agency.

**{¶52}** We find that the trial court did not have jurisdiction to determine if the rights embodied in a warranty deed would hold true against the government, or to determine that if they do, if they have value requiring compensation.

13

**{¶53}** The scope of the trial court's jurisdiction in this action, was limited to compensation and damages. Chase contends that what ODOT ultimately appropriated, a "warranty deed" and its implicit covenants, is more than what ODOT was authorized under the statute to appropriate. That does not mean that Chase was without recourse.

> [The Supreme Court of Ohio] set forth the procedural devices available to property owners seeking to challenge *anything other than compensation and damages*: 'The court has determined that, in instances where a property owner is of the opinion that there is no necessity for an appropriation, injunction is the proper remedy; that, in instances where the property owner is of the opinion that there is a "taking" of his property and the proper authority has refused payment of just compensation and has refused to institute appropriation proceedings, mandamus is a proper remedy; and that, where the Director of Transportation, by resolution, designated a "taking" and brought an action for appropriation in the Common Pleas Court and made a deposit, the jurisdiction of the Common Pleas Court is limited to a determination of the amount of compensation and damages to which the landowner is entitled.'

(Emphasis added.) *Proctor v. Theiken*, 2004-Ohio-7281 (4th Dist.), at ¶ 16, quoting *Preston v. Weiler*, 175 Ohio St. 107, 191 at syllabus.

**{¶54}** Neither Chase nor ODOT produced authority that either negates or necessitates the use of a warranty deed to transfer the interest of an appropriated property to a state agency. To the contrary, the statutes and case law suggest that a warranty deed is *not* required to transfer interest in an appropriation action.

**{¶55}** Whether it was proper to order a warranty deed to transfer the interest in the appropriated property here is a question of whether the trial court exceeded its jurisdiction by ordering Chase to give more than simply the parcel of property to be appropriated itself. That question of whether the appropriation is of more than the stated parcel ODOT requested in its petition was outside of the trial court's jurisdiction. The

14

jurisdiction of the trial court in this instance was limited, and other procedural devices were available to Chase to dispute the taking by way of a warranty deed. It is for these reasons that the trial court properly granted summary judgment in ODOT's favor.

{¶56} Chase's first assignment of error is without merit.

## Second Assignment of Error

{¶57} Chase's second assignment of error contends that the trial court further erred in granting summary judgment because ODOT's motion failed to comply with Civ.R. 56.

{¶58} Specifically, Chase asserts that the trial court should have denied ODOT's motion for summary judgment because it contained evidence not in compliance with Civ.R. 56(C).

## Standard of Review

{¶59} Chase argues that summary judgment should not have been granted because the fact summary from ODOT's motion to enforce settlement agreement was adopted in its motion for summary judgment.

{¶60} The standard of review for granting summary judgment is de novo. *McFadden*, 2023-Ohio-1086, at ¶ 12 (11th Dist.). As noted above, the moving party is entitled to summary judgment "when (1) the evidence shows 'that there is no genuine issue as to any material fact' to be litigated, (2) 'the moving party is entitled to judgment as a matter of law,' and (3) 'it appears from the evidence * * * that reasonable minds can come only to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." *Id.* at ¶ 11, quoting Civ.R. 56(C).

15

Case No. 2024-T-0041

{¶61} The decision to allow a party to adopt a fact summary is discretionary. "[The appellate court] review[s] discretionary decisions for abuse of discretion – a decision made with an unreasonable, arbitrary, or unconscionable attitude." *Carter v. Pristine Senior Living and Post-Acute Care, Inc.*, 2019-Ohio-5010, ¶ 10 (2d Dist.).

{¶62} Here, ODOT moved for summary judgment. The jurisdiction of the trial court was limited to the amount of compensation and damages which had already been stipulated by the parties. *Proctor*, 2004-Ohio-7281 at ¶ 15 (4th Dist). Chase takes issue with ODOT's motion for summary judgment because it adopts and incorporates the fact summary set forth in ODOT's previously filed motion to enforce settlement agreement. However, taking the fact summary apart from the motion it was filed within, coupled with the stipulation of value filed with the trial court, ODOT presented sufficient evidence to sustain the trial court's decision to grant summary judgment. The standard requires that where no genuine issue of material fact exists, summary judgment must be granted to the moving party. The only facts the trial court had jurisdiction to consider were facts pertaining to value. Since value was stipulated in this instance, there was no genuine issue of material fact raised, and the trial court properly granted summary judgment. As stated above, the trial court properly granted summary judgment, and did not abuse its discretion by allowing ODOT to adopt the fact summary included in its previously filed motion.

{¶63} Chase's second assignment of error is without merit.

16

{¶64} For the foregoing reasons, we affirm the decision of the Trumbull County Court of Common Pleas.

EUGENE A. LUCCI, P.J.,

MATT LYNCH, J.,

concur.